IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS CHAPMAN, | ) | CASE NO.  4:23-CV-00735-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN KEITH FOLEY, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Chris Chapman ("Chapman" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Chapman is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Chapman*, Mahoning County Court of Common Pleas Case No. 98-CR-257.  For the following reasons, the undersigned recommends that the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Chapman's conviction as follows:

1

On September 16, 1997, Paul Hardaway was shot and killed in his home at 436 West Evergreen in Youngstown, Ohio. Testimony at trial revealed that the evening before the crimes, Hardaway and Appellant drove to the east side of Youngstown where Hardaway robbed two individuals of five and one-half ounces of cocaine. (Tr. pp. 266-268). Hardaway and Appellant subsequently returned to Hardaway's home and began a night of alcohol and drug consumption with other friends. (Tr. pp. 268-271). Appellant testified that he left the house between 3:00 a.m. and 4:00 a.m. to see his girlfriend, Cheree Moore, and their child at 412 Cohasset, two blocks from Hardaway's house. (Tr. p. 271-273).

At trial, Gerald Hardaway (Gerald), the victim's brother, testified that Appellant later returned to Hardaway's house where Appellant and the Hardaways watched a movie in the bedroom. (Tr. p. 148-149). Hardaway fell asleep on the bed and Appellant left the room stating that he was going to sleep in a chair in another room. (Tr. p. 150). Gerald testified that out of the corner of his eye he saw Appellant re-enter the bedroom and walk to the side of the bed. (Tr. pp. 150-151). Gerald then heard gunshots and ducked under the bed because he believed shots were being fired through the window. (Tr. p. 151). When the gun shots stopped, Gerald looked up to find Appellant standing over him and pointing a gun at him, " * * * trying to shoot [him]." (Tr. p. 151). "He was trying to do something, but it would not shoot." (Tr. p. 158). Appellant told Gerald to lay face down, not to move and to give Appellant his money. (Tr. p. 151). Gerald gave Appellant money and crack cocaine and Appellant then searched through Paul's pockets as well as a dresser drawer. (Tr. p. 151-152). Appellant left the room and returned and demanded, "Where's the rest of the money and dope?" (Tr. p. 153). When Gerald stated that he didn't know, Appellant fled. (Tr. p. 153).

Appellant's testimony is somewhat different. According to Appellant, after he left the Hardaway house between 3:00 a.m. and 4:00 a.m., he stayed at his girlfriend's house for several hours. (Tr. p. 272-275). Appellant testified that he telephoned his girlfriend later that day and that she advised him that the police were looking for him as a suspect in the murder. (Tr. p. 276). Appellant fled to Columbus in an attempt to avoid arrest, but was arrested in Youngstown on March 4, 1998.

On April 3, 1998, Appellant was indicted on one count of aggravated murder with prior calculation and design in violation of R.C. § 2903.01(A)(D) with a firearm specification, one count of aggravated murder (felony murder) in violation of R.C. § 2903.01(B)(D) with a firearm specification, one count of aggravated robbery in violation of R.C. § 2911.01(A)(3)(C) with a firearm specification and one count of attempted aggravated murder in violation of R.C. § 2923.02(A)(E) with a firearm specification. Appellant was also indicted on one count of carrying a concealed weapon in violation of R.C. § 2923.12, which charge stemmed from his arrest on March 4, 1998.

2

> Pursuant to Appellant's motion filed on May 4, 1998, the trial court granted Appellant's request to try the concealed weapon charge separately. On May 7, 1998, Appellant waived his right to a jury trial and elected to have this matter heard by the court.
>
> On May 14, 1998, the trial court found Appellant not guilty of aggravated murder with prior calculation and design, guilty of felony murder with a firearm specification and guilty of aggravated robbery with a firearm specification. The trial court found Appellant not guilty of attempted aggravated murder but guilty of the lesser included offense of attempted murder in violation of R.C. § 2923.02 and § 2903.02 with a firearm specification.
>
> The trial court sentenced Appellant to life imprisonment for aggravated murder plus three years mandatory incarceration on the firearms specification. On the aggravated robbery conviction, the trial court sentenced Appellant to ten years incarceration with an additional mandatory sentence of three years for the firearm specification. On the attempted murder conviction, the trial court sentenced Appellant to ten years incarceration with a mandatory three years for the firearm specification. The court ordered that the sentences for attempted murder to be served consecutively to the sentences for aggravated murder as they constituted separate and distinct crimes. However, for sentencing purposes, the trial court merged the firearm specifications on the charges of aggravated murder and aggravated robbery as they were part of the same act or transaction.

*State v. Chapman*, 2000-Ohio-2562, 2000 WL 1506198, at **1-2 (Ohio Ct. App. Sept. 26, 2000).

## II.     Procedural History

### A.     Trial Court Proceedings

On April 3, 1998, the Mahoning County Grand Jury indicted Chapman on the following charges: one count of Aggravated Murder in violation of O.R.C. § 2903.01(A)(D) with a firearm specification charge; one count of Aggravated Murder in violation of O.R.C. § 2903.01(B)(D) with a firearm specification charge; one count of Aggravated Robbery in violation of O.R.C. § 2911.01(A)(3)(C) with a firearm specification charge; one count of Attempted Aggravated Murder in violation of O.R.C. § 2923.02(A)(E)/2903.01(A) with a firearm specification charge; and one count of Carrying Concealed Weapons in violation of O.R.C. § 2923.12(A)(D). (Doc. No. 10-1, Ex. 1.) Chapman pled not guilty to all charges. (Doc. No. 10-1, Ex. 2.)

3

On May 4, 1998, Chapman, through counsel, filed a motion for separate trials, arguing that the Carrying a Concealed Weapon charge was unrelated and occurred five and a half months after the robbery and murder.  (Doc. No. 10-1, Ex. 3.)

That same day, Chapman, through counsel, filed a motion to suppress statements made after his arrest.  (Doc. No. 10-1, Ex. 4.)  In the motion, counsel argued that Chapman "is of substandard intelligence and lacks the capacity to understand his rights as prescribed in Miranda v. Arizona 384 US 436 (1966) and therefore, any statements in response to a police officers [sic] interrogation were elicited in violation of the Defendant's Constitutional Rights . . . ."  (*Id.*)

On May 6, 1998, the trial court held a hearing on the motion for separate trials and the motion to suppress.  (Doc. No. 10-1, Ex. 5.)  After hearing argument, the trial court sustained the motion for separate trials and overruled the motion to suppress.  (*Id.*)

On May 7, 1998, Chapman signed a waiver of jury trial.  (Doc. No. 10-1, Ex. 6.)

On May 14, 1998, after a bench trial, the trial court found Chapman not guilty of Aggravated Murder under O.R.C. § 2903.01(A)(D) with a firearm specification charge (Count One), guilty of Aggravated Murder under O.R.C. § 2903.01(B)(D) with a firearm specification charge (Count Two), guilty of Aggravated Robbery with a firearm specification charge (Count Three), and not guilty of the Attempted Aggravated Murder charge, but guilty of the lesser included offense of Attempted Murder under O.R.C. §§ 2923.02 and 2903.02 with a firearm specification (Count Four).  (Doc. No. 10-1, Ex. 8.)

The trial court then proceeded to sentencing.  (*Id.*)  The trial court merged the firearm specifications attached to Counts Two and Three.  (*Id.* at 2.)  The trial court sentenced Chapman to life in prison on Count Two, with a mandatory term of three prior and consecutive years in prison for the attached firearm specification, 10 years in prison on Count Three, with a mandatory term of three prior and consecutive years in prison for the attached firearm specification, and 10 years in prison on Count

Four, with a mandatory term of three prior and consecutive years in prison for the attached firearm specification, to be served consecutively to the sentences imposed under Count Two. (*Id.* at 1-2.) The trial court advised Chapman of his right to appeal and appointed Chapman's trial counsel to represent Chapman on direct appeal. (*Id.* at 2.)

## B.    Direct Appeal

Chapman, through counsel, filed a timely notice of appeal to the Seventh District Court of Appeals. (Doc. No. 10-1, Ex. 9.) In his appellate brief, he raised the following assignment of error:

> I.    THE TRIAL COURT ERRED WHEN IT CONVICTED THE DEFENDANT AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

(Doc. No. 10-1, Ex. 10.) The State filed a brief in response. (Doc. No. 10-1, Ex. 11.)

On September 26, 2000, the state appellate court affirmed Chapman's convictions. (Doc. No. 10-1, Ex. 12.) *See also State v. Chapman*, 2000 WL 1506198.

Chapman did not timely file a direct appeal in the Ohio Supreme Court.

On July 19, 2018, Chapman, proceeding *pro se*, filed an untimely Notice of Appeal and Motion for Delayed Appeal with the Supreme Court of Ohio. (Doc. No. 10-1, Ex. 13-14.) Chapman argued that his appellate counsel "failed in his duties to properly file before this Court an additional appeal from the Appeals Courts [sic] denial of my trial appeal." (Doc. No. 10-1, Ex. 14.) In an affidavit, Chapman averred that appellate counsel never mentioned the Supreme Court of Ohio "as a potential for continuation of the appellate process." (*Id.* at 4.) Chapman further averred that his family paid another attorney $10,000 "to continue pursuit of [his] appellate options into this Court and to prove actual innocence," but that attorney had failed to do anything, and disciplinary proceedings were pending against the attorney. (*Id.*) Chapman also averred that he had no knowledge of the law, has relied on counsel throughout his legal proceedings, and acted in good faith in trusting counsel and believing counsel was representing him "in an appropriate and equitable manner." (*Id.*) Fellow prisoner Gary Evans represented Chapman was

5

"mentally unable to comprehend the procedures to pursue an appeal," and Evans had been working with "other lay persons" to explain Chapman's case to the Supreme Court of Ohio.  (*Id.* at 5.)  The State did not file a response.

On November 21, 2018, the Supreme Court of Ohio denied the motion for delayed appeal and dismissed the case.  (Doc. No. 10-1, Ex. 15.)

## C.  Post-Conviction Filings

### 1.  Motion for Production

On June 20, 2018, Chapman, *pro se*, filed a Motion for the Production of All Physical Documents of Psychological and Mental Reports in the trial court.  (Doc. No. 10-1, Ex. 16.)  The State did not file a written response.  On July 23, 2018, the trial court determined that no such documents existed in Chapman's case and overruled the motion.  (Doc. No. 10-1, Ex. 17.)

Chapman did not timely file an appeal in the state appellate court.

### 2.  Petition to Vacate

On January 21, 2020, Chapman, *pro se*, filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence in the trial court. (Doc. No. 10-1, Ex. 18.)  In response, the State filed a Motion for Judgment on the Pleadings. (Doc. No. 10-1, Ex. 19.) On February 26, 2020, the trial court found Chapman's Petition was untimely and denied and dismissed the Petition.  (Doc. No. 10-1, Ex. 20.)

On February 27, 2020, Chapman filed supplemental claims to his Petition to Vacate or Set Aside Judgment of Conviction or Sentence.  (Doc. No. 10-1, Ex. 21.)  That same day, Chapman filed a "Memorandum Contra State's 'Motion for Judgment on the Pleadings.'"  (Doc. No. 10-1, Ex. 22.)  The State did not respond to these filings.  On March 4, 2020, the trial court issued an order stating it had considered Chapman's pleadings and that, after review, the dismissal of Chapman's Petition remained the judgment of the court.  (Doc. No. 10-1, Ex. 23.)

6

On March 4, 2020, Chapman, *pro se*, filed a timely notice of appeal with the Seventh District Court of Appeals.  (Doc. No. 10-1, Ex. 24.)  In his appellate brief, he raised the following assignments of error:

    I.    The trial court erred and abused its discretion in refusing to conduct a hearing On [sic] Appellant's Petition for Post-Conviction Relief as required by Ohio Revised Code §2953.23, et. seq. (Docket)

    II.   The trial court erred and abused its discretion in deeming Appellant's Petition for Post-Conviction Relief to be untimely, and refusing to toll the time under Ohio Revised Code §2953.23, et. seq. (Journal Entry)

    III.  The trial court erred and abused its discretion in refusing to grant relief on Appellant's Petition for Post-Conviction Relief. (Journal Entry)

(Doc. No. 10-1, Ex. 25.) The State filed a brief in response.  (Doc. No. 10-1, Ex. 26.)  On November 25, 2020, the state appellate court overruled Chapman's assignments of error and affirmed the trial court's ruling.  (Doc. No. 10-1, Ex. 27.)  *See also State v. Chapman*, 2020-Ohio-5589, 2020 WL 7233670 (Ohio Ct. App. Nov. 25, 2020).

Chapman did not timely appeal the state appellate decision to the Ohio Supreme Court.

On March 18, 2021, Chapman, *pro se*, filed an untimely Motion for Reconsideration in the state appellate court.  (Doc. No. 10-1, Ex. 28.)  The State filed a response in opposition.  (Doc. No. 10-1, Ex. 29.)  On June 11, 2021, the state appellate court denied Chapman's motion for reconsideration because it was untimely.  (Doc. No. 10-1, Ex. 30.)  *See also State v. Chapman*, 2021-Ohio-2015, 2021 WL 2453103 (Ohio Ct. App. June 11, 2021).

On July 6, 2021, Chapman, *pro se*, filed a notice of appeal with the Supreme Court of Ohio. (Doc. No. 10-1, Ex. 31.)  In his Memorandum in Support of Jurisdiction, Chapman raised the following propositions of law:

    I.    WHERE A QUESTION IS RAISED TO A TRIAL COURT IN A CRIMINAL CASE AS TO WHETHER THE DEFENDANT IS COMPETENT TO STAND TRIAL, OHIO REVISED CODE §2945.37 IMPOSES A MANDATORY DUTY UPON THE TRIAL JUDGE TO

7

      INQUIRE, ON THE RECORD, AS TO THE DEFENDANT'S COMETPENCY (SIC) AND CONDUCT A HEARING AND TAKE ANY OTHER NECESSARY STEPS TO DETERMINE THE DEFENDANT'S COMPETENCY, AND THE FAILURE TO DO SO DEPRIVES THE COURT OF JURISDICTION TO PROCEED.

II. WHERE DEFENSE COUNSEL IN A CRIMINAL CASE IS ALSO APPOINTED TO REPRESENT THE DEFENDANT ON DIRECT APPEAL, RES JUDICATA DOES NOT APPLY TO BAR SUBSEQUENT CONSIDERARIONS OF ISSUES RELATING TO COUNSEL'S INEFFECTIVENESS.

III. BECAUSE THE STATE OF OHIO DOES NOT PROVIDE APPOINTED COUNSEL TO PROSECUTE POST-CONVICTION OR OTHER COLLTERAL REVIEW PROCEEDINGS FOR INDIGENT CRIMINAL DEFENDANTS, NO PROCEDURAL DEFAULT CAN ATTACH TO ANY CLAIMS BROUGHT IN SUCH PROCEEDINGS WHERE THE DEFAULTS HAVE ACCRUED DUE TO THE DEFENDANT'S PRO SE STATUS.

IV. WHERE APPOINTED TRIAL COUNSEL IN A CRIMINAL CASE FAILS TO SEEK A MANDATORY COMPETENCY HEARING, FAILS TO INVESTIGATE WITNESSES TO THE CRIME, FAILS TO INVESTIGATE THE CRIME SCENE, OR SEEK TESTING OF AVAILABLE EXCULPATORY BIOLOGICAL EVIDENCE, BLAMES THE STATE WITNESS/VICTIM'S BROTHER FOR THE CRIME WITHOUT FOUNDATION TO DO SO WHICH PREJUDICED THE TRIAL COURT AGAINST THE DEFENDANT, PERMITS AN IMCOMPETENT DEFENDANT TO WAIVE HIS RIGHT TO A JURY, AND AFTER PROSECUTING THE DEFENDANT'S DIRECT APPEAL, ADMITS TO BEING RESPONSIBLE FOR THE EXPIRATION OF TIME TO TIMELY SEEK REVIEW BY THE OHIO SUPREME COURT, SUCH COUNSEL IS INEFFECTIVE WITHIN THE MEANING OF THE SIXTH AND FOURTEENTH AMENDMENTS.

(Doc. No. 10-1, Ex. 32.) The State filed a waiver of memorandum in response. (Doc. No. 10-1, Ex. 33.)

On August 17, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Chapman's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 10-1, Ex. 34.)

**D.**    **Federal Habeas Petition**

On April 5, 2023,[1] Chapman filed a Petition for Writ of Habeas Corpus in this Court and asserted

the following grounds for relief:

GROUND ONE:  Ineffective Assistance of Counsel.

**Supporting Facts**:  My attorney did not recuse himself when appointed as Appellate Attorney. My attorney did not have me evaluated prior to trial. My attorney did not have physical evidence found at the crime scene, shoe prints, blood, bullet shells tested. My attorney had me waive my rights to a jury trial. My attorney did not call any of my witnesses at trial.

My appointed trial attorney used my juvenile mental evaluation to only show the Court my juvenile record.  Instead he should have used it to show the Court I needed an Adult evaluation due to my IQ of 67.  Instead it was only used to prejudice me and slip my juvenile record into the trial.

GROUND TWO:  The Court of Common Pleas did not follow basic laws.

**Supporting Facts**:  The Court aware of my mental status through documents did not hold a hearing or have me evaluated. The Court failed to have my mother/guardian present at all times as she is my legal guardian due to my mental status. The Court also decided who I was allowed to have as my witnesses for my defense.

I was the only <u>BLACK</u> person in my trial.  All Court personell [sic], Judges, Lawyers were white.  I was the only black person.

GROUND THREE:  Supreme courts [sic] denial to hear my appeals.

**Supporting Facts**:  After exhausting all of my State Court remedies the Supreme Court of Ohio refuse [sic] to hear my appeal in direct conflict of its own Court rulings.

GROUND FOUR:  Actual Innocence.

**Supporting Facts**:  My ineffective of assistance of counsel claims for not investing [sic] my case. There was overwhelming evidence that would have helped my defense.

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until April 11, 2023, Chapman states that he placed it in the prison mailing system on April 5, 2023.  (Doc. No. 1 at 13.)  Thus, the Court will consider the Petition as filed on April 5, 2023.

(Doc. No. 1; Doc. No. 1-1) (emphasis in original).

On May 15, 2023, Chapman filed a motion for appointment of counsel.  (Doc. No. 6.)

On June 27, 2023, Chapman filed a motion to attach and incorporate.  (Doc. No. 9.)

Respondent did not file a response.

On July 10, 2023, Respondent filed the Return of Writ.  (Doc. No. 10.)

On September 5, 2023, the Court denied Chapman's motions for appointment of counsel and to attach and incorporate.  (Doc. No. 13.)

On September 25, 2023, Chapman filed another motion to attach and incorporate.  (Doc. No. 15.)

Respondent did not file a response.

On October 11, 2023, while his motion to attach and incorporate was still pending, Chapman filed his Traverse.  (Doc. No. 16.)

On October 17, 2023, Chapman filed another motion to attach and incorporate.  (Doc. No. 17.)

On October 23, 2023, the Court granted Chapman's motions to attach and incorporate (Doc. Nos. 15, 17) and ordered Chapman to file an Amended Traverse, in which he was to address each of the grounds raised in his original Petition, as well as the additional claims raised in his motions to attach and incorporate.  (Doc. No. 18.)

On November 21, 2023, Chapman filed his Amended Traverse and asserted the following grounds for relief:

> **Ground A**: My attorney had me waive my rights to a jury trial.
>
> **Ground B**: My attorney did not have me evaluated after he was given my previous evaluation from my psychologist by my mother.
>
> **Ground C**: My attorney did not bring my witnesses.
>
> **Ground D**: My attorney failed to suppress statements.
>
> **Ground E**: My lawyer did not have biological/physical evidence tested.

10

**Ground F**: My attorney did not move to suppress identification.

**Ground G**: My attorney did not recuse himself as appellate counsel.

**Ground H**: Conflicting Testimony.

(Doc. No. 21.)[2]

On February 15, 2024, after Respondent failed to respond to the Amended Traverse as ordered, the Court directed Respondent to file a response to the Amended Traverse within 14 days of the Order. (Doc. No. 24.)

On February 28, 2024, Respondent filed a Response to the Amended Traverse. (Doc. No. 27.)

### III. Law and Argument

**A.    Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a state court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of--

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[2] In a letter from fellow prisoner Gary Evans, who has been assisting Chapman with his habeas case, Evans represents that all 17 claims were raised in the Amended Traverse; they just did not all have a letter in front of them. (Doc. No. 29.)

**B.      One-Year Limitation**

Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Here, Chapman was sentenced on May 13, 1998, and timely appealed on May 27, 1998.  (Doc. No. 10-1, Ex. 8-9.)  The state appellate court affirmed his conviction and sentence in a decision that was journalized on September 26, 2000.  (Doc. No. 10-1, Ex. 12.) Chapman then had forty-five (45) days to appeal to the Supreme Court of Ohio but failed to do so. Respondent argues that Chapman's deadline to file his appeal with the Supreme Court of Ohio expired on November 13, 2000.  (Doc. No. 10 at 15.)  Respondent asserts the limitations period commenced on November 14, 2000, and, absent tolling, would have expired one year later on November 14, 2001.  (*Id.*)

Chapman does not challenge Respondent's assertion that § 2244(d)(1)(A) is the applicable provision or that his Petition is untimely thereunder.  (Doc. No. 21.)  Thus, the Court finds Chapman's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on November 14, 2000, forty-five (45) days after the state appellate court issued its decision affirming his conviction and the time to file a timely notice of appeal with the Supreme Court of Ohio expired.  Accordingly, the Court finds the limitations period commenced on November 14, 2000, and, absent tolling, expired one year later on November 14, 2001.

However, as Respondent correctly notes, the AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state post-conviction review is 'pending'

includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*

Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, No. 2:08–cv–01168, 2009 WL 73905, at *2 (S.D. Ohio Jan. 8, 2009). A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Id.* (citation omitted). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe*, 2009 WL 73905, at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

A review of the record shows Chapman made no filings between September 26, 2000 (the date the state appellate court opinion was journalized) and November 14, 2001 (the date the AEDPA statute of limitations expired). Chapman did not file any motions or petitions for collateral post-conviction relief in the trial court until June 20, 2018, nearly 17 years after the ADEDPA statute of limitations expired. (Doc. No. 10-1, Ex. 16.) Chapman did not file his Motion for Delayed Appeal with the Supreme Court of Ohio until July 19, 2018. (Doc. No. 10-1, Ex. 13-14.) Chapman did not file his Petition to Vacate with the state

trial court until January 21, 2020, more than 18 years after his habeas deadline expired.[3] (Doc. No. 10-1, Ex. 18.)   As noted, state collateral review proceedings can no longer serve to avoid the statute of limitations bar once the limitations period is expired.  *See Vroman*, 346 F.3d at 602.  Because Chapman did not file <u>any</u> motions with the state court until well after the limitations period expired, his motions did not have any further tolling effect.

As the statutory limitations period expired on November 14, 2001, and Chapman did not file his habeas petition until April 5, 2023, the Court finds the Petition is over 21 years late and is untimely under § 2244(d)(1)(A).   Therefore, unless equitable tolling is appropriate, Chapman's Petition should be dismissed as time-barred.[4]

## C.  Equitable Tolling

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).

However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of

---

[3] The Court does not form an opinion as to whether any of Chapman's post-sentencing filings were "properly filed" for purposes of §2244(d)(2) because Chapman did not make any filings prior to the expiration of his AEDPA statute of limitations deadline on November 14, 2001.

[4] Chapman does not argue that the limitations period should commence at a later date for any of the reasons set forth in §§ 2244(d)(1)(B)-(D).

persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 130 S.Ct. at 2565. *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 130 S.Ct. at 2565. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating that a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Correctional Inst.*, 620 F. App'x 417, 419 (6th Cir. 2015).

Here, Chapman fails to respond to Respondent's statute of limitations argument or argue grounds for overcoming AEDPA's time bar. (Doc. No. 21.) However, Chapman's pleadings consistently refer to his low IQ and his "mental handicap," and fellow prisoner Gary Evans has been preparing Chapman's pleadings and other documents in this case. (*See, e.g.,* Doc. Nos. 1, 21.) Respondent asserts that any argument that Chapman's mental handicap is grounds to overcome the time bar is meritless, as "Chapman has not presented evidence that he is mentally incompetent or that his alleged incompetence caused his failure to comply with the statute of limitations." (Doc. No. 27 at 8.)

To warrant equitable tolling based on mental incompetence, the petitioner must establish each of the following: "(1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with the AEDPA's statute of limitations." *Ata v. Scutt*, 622 F.3d 736, 742 (6th Cir. 2011). A petitioner's "blanket assertion of mental incompetence is insufficient to toll the statute of limitations"; "[r]ather, a causal link between the mental condition and untimely filing is required." *Id.*

The record contains a July 1993 psychological evaluation, conducted when Chapman was fifteen years old, finding a "Full Scale IQ of 67," which was "in the upper part of the mild mental retardation range."  (Doc. No. 10-1, Ex. 4, PageID #139.)[5]  In an affidavit in support of Chapman's July 2018 motion for delayed appeal, fellow prisoner Gary Evans averred that Chapman was "mentally unable to comprehend the procedures to pursue an appeal," and Evans had been "working in concert with other lay persons trying to help Chris Chapman explain his case to this Court."  (Doc. No. 10-1, Ex. 14, PageID #207.)  However, Chapman fails to explain how his low IQ prevented him from pursuing his claims for almost 20 years but allowed him to file a motion for delayed appeal with the Supreme Court of Ohio and a motion for the production of all physical documents of psychological and mental reports in the trial court in 2018.  Even if Chapman "required the assistance of other prisoners to prepare" his 2018 motions, "he does not explain why he was unable to obtain the same type of assistance" earlier.  *Tanner v. Burt*, Case No. 1:16-cv-1050, 2016 WL 11476976, at *4 (W.D. Mich. Sept. 15, 2016).  Nor does Chapman explain the almost two-year gap between the last of his state court proceedings in 2021 and the filing of his habeas Petition with this Court in April 2023.

Furthermore, as this Court has previously found:

> [E]ven if Petitioner had established a causal link between his low IQ, alleged illiteracy, and his failure to comply with the AEDPA's one-year statute of limitations, the causal link is broken by Petitioner's admission that he has relied on others to present his arguments and filings. *See Plummer v. Warren*, 463 Fed.Appx. 501, 506 (6th Cir. 2012) (concluding that "because [petitioner] was not doing her own legal work, her physical disabilities could not have impacted the timeliness of their filing."); *Bilbrey v. Douglas*, 124 Fed.Appx. 971, 973 (6th Cir. 2005) (noting that petitioner failed to establish a causal connection between her mental condition and her failure to timely file where the filing delay appeared to result from a miscalculation of the statutory limitations period by the inmate legal aid); *Smith v. Beightler*, 49 Fed.Appx. 579, 582 (6th Cir. 2002) (finding that petitioner, who was blind and relied on

---

[5] The state trial court considered this evaluation in ruling on Chapman's motion to suppress, and ultimately found Chapman knowingly, intelligently, and voluntarily waived his rights notwithstanding his mental impairments.  (Doc. No. 10-1, Ex. 5; Doc. No. 10-2, PageID #410-52.)

> others to assist him in accessing the courts did not "meet the standards required for invocation of equitable tolling," as petitioner's reliance on others does not establish that petitioner lacked knowledge of the filing requirement, that he was diligent in pursuing his rights, or that the respondent would not be prejudiced by the delay in the filing of the petition).

*Noles v. Jenkins*, No. 3:15 CV 587, 2016 WL 916695, at *2 (N.D. Ohio Mar. 9, 2016). *Cf. Stiltner v. Hart*, 657 F. App'x 513, 525-26 (6th Cir. 2016) ("[G]iven the specific facts of this case, in particular Stiltner's severe mental incompetence—which left him unable to monitor the assistance he had in even the most basic ways—the district court erred in denying equitable tolling.").[6]

As Chapman failed to respond to Respondent's statute of limitations arguments, he did not raise any claims of ineffective assistance of counsel as grounds for equitable tolling. However, in his motion for leave to file a delayed appeal with the Supreme Court of Ohio, Chapman argued that his appellate attorney failed to file a timely appeal with the Supreme Court of Ohio. (Doc. No. 10-1, Ex. 14 at PageID# 208.) A letter from Chapman's appellate counsel attached in support of Chapman's motion for delayed appeal reflects that Chapman did not receive the state appellate court entry when counsel mailed it at the end of September. (*Id.* at PageID #209.) Chapman reached out to his attorney in early December of 2000, at which time counsel mailed another copy of the entry. (*Id.*) Chapman's appellate counsel also stated that while he "normally advise[s] his clients in writing to contact the Public Defender's Office when they

---

[6] The Court notes that there is no such evidence presented by Chapman here. In addition, the Sixth Circuit was clear that its holding in *Stiltner* rested on the facts presented in that case and was careful to delineate the contours of its holding: "We emphasize what we do not hold. We do not hold that a finding of mental incompetence obviates the need to inquire into causation—or more specifically, into diligence. As we observed in *Ata*, 'a blanket assertion of mental incompetence is insufficient to toll the statute of limitations'—we require a causal link between the mental incompetence and the delayed filing. 662 F.3d at 742. Nor do we hold that, within our inquiry into diligence, the availability of legal assistance is unimportant. Legal assistance is, 'in many circumstances[,] ... highly relevant to the question of whether a petitioner's mental condition made it impossible to file a timely petition.' *Bills*, 628 F.3d at 1101. But it is not highly relevant in these circumstances (and it is not dispositive in *any* circumstances). *Id.*" *Stiltner v. Hart*, 657 F. App'x 513, 525 (6th Cir. 2016) (emphasis in original).

lose their appeal," in his letter to Chapman, counsel "requested [Chapman] contact me if he ha[d] any questions."[7] (*Id.*)

The Sixth Circuit has found that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant" equitable tolling. *Keeling*, 673 F.3d at 462 (quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)). However, "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'" *Robinson*, 424 F. App'x at 443 (quoting *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)). Rather, to obtain equitable tolling, a petitioner "must demonstrate that he exercised a reasonable diligence in protecting his appellate rights." *Id*.

In a case similar to the one at bar, the Sixth Circuit affirmed the district court's refusal to equitably toll the statute of limitations, and summarized the law on this issue as follows:

> Keeling himself admits that he waited almost three years after the decision in his original appeal to the Ohio Court of Appeals before filing his first *pro se* post-conviction motion. 'While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update, ... this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half.' *Robinson*, 424 Fed.Appx. at 443. In *Robinson*, the petitioner requested case updates from his attorney, who failed to provide them, and the petitioner waited eighteen months between his last two update requests. *Id.* at 440–41, 443. This court found that the petitioner failed to exercise the required diligence in pursuing his rights and affirmed the district court decision declining to equitably toll the statute of limitations, even though the petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued. *Id.* at 440–43. Further, we have declined to allow equitable tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal. *Winkfield v. Bagley*, 66

---

[7] The letter from appellate counsel states that counsel was contacted by attorney Dan Johnson from the Public Defender's Office, and that Mr. Johnson requested a copy of the appeal briefing and the Ohio Court of Appeals decision in Mr. Chapman's case. Appellate counsel represented that he sent copies of those materials to Mr. Johnson.

Fed.Appx. 578, 583–84 (6th Cir. 2003).  Similarly, this court has declined to equitably toll the statute of limitations where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction.  *Elliott v. Dewitt*, 10 Fed.Appx. 311, 312–13 (6th Cir. 2001).

Here, Keeling's delay exceeds that which has previously been found excessive and inappropriate for the application of equitable tolling.  *See Robinson*, 424 Fed.Appx. at 443.  Keeling did not diligently monitor the status of his appeal.  *See Winkfield*, 66 Fed.Appx. at 583–84; *Elliott*, 10 Fed.Appx. at 313.  Even after learning of the Court of Appeals's decision, Keeling did not diligently pursue his delayed appeal or file a timely federal habeas petition.  Despite Keeling's argument to the contrary, he has not acted with the sufficient diligence to warrant equitable tolling of the statute of limitations.

*Keeling*, 673 F.3d at 463–64 (emphasis added).

Like the petitioner in *Keeling*, above, the Court finds Chapman failed to exercise reasonable diligence in either monitoring the status of his appeal or protecting his federal habeas rights.  Over seventeen years elapsed between the state appellate court's decision and Chapman's motion for leave to file a delayed appeal with the Supreme Court of Ohio.  The letter attached to his motion from his appellate attorney reflects that a second copy of the state appellate court entry was mailed to Chapman in December 2000.  Chapman fails to explain this prolonged delay in filing his motion for leave to file a delayed appeal.  Chapman also fails to explain why he waited until April 2023 to file his habeas petition after the denial of his motion for leave to file delayed appeal, which was issued in November 2018, and after the conclusion of his post-conviction filings in August 2021.

Thus, and for all the reasons set forth above, the Court finds Chapman has failed to demonstrate he has been reasonably diligent in pursuing his rights.  *See e.g., Vroman*, 346 F.3d at 605 (finding petitioner's decision to proceed solely to the Ohio Supreme Court rather than filing his federal habeas petition and protecting his federal constitutional rights shows a lack of diligence); *Robinson*, 424 F. App'x at 442 ("[t]his Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half,

and we decline to do so here"); *Dudley v. Clipper*, No. 1:13CV1277, 2014 WL 6896080, at \*\*8-9 (N.D. Ohio Dec. 8, 2014).

The Court also rejects any suggestion that Chapman's *pro se* status and/or ignorance of the law constitute "extraordinary circumstances" warranting equitable tolling. The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 F. App'x 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 F. App'x 783, 789 (6th Cir. 2015). *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 1:15CV628, 2015 WL 10488878, at \*9 (N.D. Ohio Dec. 29, 2015). Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient. *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing"); *Burden v. Bunting*, 5:15 CV 00967, 2016 WL 5417834, at \*6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling"); *Johnson v. LaRose*, 4:15–cv–2085, 2016 WL 5462635, at \*10 (N.D. Ohio July 8, 2016) ("A petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling"). Accordingly, and under the circumstances presented, the Court finds Chapman has failed to demonstrate his *pro se* status, limited education, and/or lack of legal training constitute extraordinary circumstances justifying equitable tolling.

In sum, because Chapman failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing the instant Petition, the Court finds equitable tolling is not warranted in this case.

## E.      Actual Innocence

In *McQuiggin v. Perkins*, ⸺ U.S. ⸺, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id.* at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id*. (quoting *Schlup*, 513 U.S. at 332).

Here, Chapman does not identify any new, reliable evidence of his actual innocence that was not presented at trial.  The Court finds Chapman has not demonstrated he is entitled to the actual innocence exception.  Accordingly, and for all the reasons set forth above, the Court finds Chapman has not demonstrated he is entitled to the actual innocence exception.

## IV.    Conclusion

For all the reasons set forth above, it is recommended the Court find that the instant Petition is time-barred under § 2244(d)(1) and DISMISS the Petition.

Date: December 20, 2024

_s/ Jonathan Greenberg_
Jonathan D. Greenberg
United States Magistrate Judge

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  _Berkshire v. Beauvais_, 928 F.3d 520, 530-31 (6th Cir. 2019).**